IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | Bankruptcy Case No. 17-20526-TPA |
| UNIQUE VENTURES GROUP, LLC, | Chapter 11 |
| DEBTOR. | Hearing Date and Time: |
| UNIQUE VENTURES GROUP, LLC, | |
| MOVANT, | |
| v. | Response Date: |
| Sabatini Family Limited Partnership, J. Michael Sabatini, Futures663, LP, Futures663, LLC, Joseph E. Rusnock, Michael Rusnock, Rusnock Family Limited Partnership, John J. Nalipinski, Jack R. Kuhn, Michael I. Frangoulis Family Limited Partnership and Michael I. Frangoulis, Jr. | |
| RESPONDENTS. | |

**EXPEDITED MOTION OF DEBTOR PURSUANT TO 11 U.S.C. §543(d) TO:
(I) EXCUSE COMPLIANCE BY THE COURT-APPOINTED RECEIVER OF THE REQUIREMENTS OF 11 U.S.C. §543(a) AND (b), TO THE EXTENT APPLICABLE;
(II) ALLOW RECEIVER TO REMAIN IN POSSESSION, CUSTODY, AND CONTROL OF THE DEBTOR'S PROPERTY; AND
(III) ALLOW RECEIVER TO MAINTAIN AND OPERATE SUCH PROPERTY IN THE <u>ORDINARY COURSE OF BUSINESS</u>**

NOW COMES Unique Ventures Group, LLC (the "Debtor"), the above-captioned debtor and debtor in possession, by and through its proposed counsel, David K. Rudov and Scott M. Hare, pursuant to §105(a) and §543(d) of title 11 of the United States Code (the "Bankruptcy Code"), and hereby moves this Court (the "Motion") for entry of an order authorizing Eric E. Bononi, the state court-appointed receiver for the Debtor (the "Receiver"), (I) to be excused from any turnover or other requirements under §543(a) and (b) of the Bankruptcy Code, to the extent applicable; (II)

to remain in possession, custody, and control of the Debtor's property; and (III) to maintain and operate such property in the ordinary course of business pursuant to the state-court Receivership Order and sections 1107 and 1108 of the Bankruptcy Code. **Debtor has named, as Respondents, all equity owners/members or alleged equity owners/members of the Debtor and the individual representatives of any owner/member entities**. In support of this Motion, the Debtor respectfully represents as follows:

### REQUEST FOR EXPEDITED HEARING

Pursuant to Local Bankruptcy Rule 9013-2, the Debtor requests an Expedited Hearing for the following reasons:

(1)  the substantive relief that is sought requests that this Court issue an Order under 11 U.S.C. §543(d) for the following reasons:

*As set forth in more detail in the within Motion and the First Day Declaration, the Receiver was appointed by the Honorable Christine A. Ward of the Court of Common Pleas to replace prior management and serve as the substituted corporate governance of the Debtor. As set forth in more detail in the First Day Declaration, the Receiver discovered that prior management incurred significant tax debt and other liabilities, used Debtor funds to pay the obligations of other business entities, and was plagued by frequent in-fighting. Since his appointment, the Receiver has taken steps to address the tax arrears and other debts, to control cash flow and protect it from diversion, and to referee the continuing in-fighting of the prior management.*

*On February 14, 2017, newly-hired counsel for some of the prior management issued a letter demanding turnover. (See Exhibit A attached hereto.) The Receiver believes that certain members of prior corporate management desire to reassert control of the Debtor.*

*The Receiver believes that the largest creditor in this case supports the relief sought in this Motion under 11 U.S.C. §543(d). Therefore, the Receiver seeks to remove any doubt as to his ability to act as the representative of the bankruptcy estate in this proceeding.*

(2)  just cause exists to request consideration of the underlying matter on an expedited basis because:

*Certain of the Respondents have hired new counsel who have demanded that the Receiver immediately surrender control of the Debtor and return such control to*

> *prior management. Any such surrender of control to prior management would severely undermine the best interests of creditors, as it was prior management that allowed significant tax arrears and other debt to accrue and allowed and/or caused the diversion of funds. The best interests of all creditors will be served by relief sought herein.*

(3)  the specific harm the Movant shall incur if a hearing is not granted on an expedited basis:

> *Debtor's estate and its creditors will be prejudiced by returning control of Debtor to its prior management. The relief sought herein will permit the Debtor to continue business relationships and move forward with a 363 Sale or a recapitalization.*

(4)  the need for an expedited hearing has not been caused by any lack of due diligence on the part of the attorney or the attorney's client but has been brought about solely by circumstances beyond their control. Counsel for former management has made a demand for surrender of the Debtor's assets, contrary to the best interests of all creditors.

## STATUS OF THE CASE AND JURISDICTION

1. On February 13, 2017, the Debtor, by its court-appointed Receiver, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§1408 and 1409.

3. The statutory and legal predicates for the relief sought herein are 11 U.S.C. §§ 105(a) and 543(d).

## BACKGROUND

4. Unique Ventures Group, LLC (referred to herein as "Unique") is a Limited Liability Company whose original members consisted of Joseph Rusnock, J. Michael Sabatini, Jack Kuhn, Carl Baker, and Jack Nalipinsky and/or their respective entities. The Respondents named herein constitute all current members and/or alleged members of Unique.

5. Unique owns 28 Perkins restaurants and may have an interest in nine (9) Burger King Restaurants.

6. Unique purchased the Perkins restaurant operations from the Travalini family for a total price of $38,000,000. Spirit Funding financed the purchase price and holds a perfected

security interest in substantially all of Unique's assets. Unique pays Spirit $265,565.14 per month to "lease back" these locations.

7. The operation of Unique's restaurant businesses historically grossed approximately $38,000,000 per year. However, after paying Spirit Funding and certain operating expenses, Unique reportedly nets only approximately $500,000 per year.

8. In order to infuse additional capital into this venture, in or about July 2015, Michael I. Frangoulis, Jr., through the Michael I. Frangoulis, Jr. Family Limited Partnership, was brought in as a member of Unique. With Frangoulis on board, the group formed a new business entity known as Elite Restaurant Group, LP (referred to herein as "Elite").

9. Elite Restaurant Group, LP is a Pennsylvania limited partnership whose limited partners are believed to be Ronald T. Conway and Michael Frangoulis, and whose general partner is Buaiteoir Management, Inc. However, there is major infighting among the insiders of both Unique and Elite regarding ownership interests.

10. Additionally, the insiders accuse each other of excessive withdrawal and spending of Unique revenues. As more fully set forth below, there were significant issues involving the bookkeeping for these businesses.

11. On or about February 16, 2016, an action was commenced in the Court of Common Pleas of Allegheny County, Pennsylvania, at case number GD 16-002322, seeking among other relief, the appointment of a receiver for Unique.

12. By Receivership Order dated October 13, 2016, the Honorable Christine Ward appointed Eric E. Bononi, Esquire, CPA as the Receiver for Unique pursuant to Pennsylvania Rule of Civil Procedure 1533. Specifically, Judge Ward ordered, *inter alia*, that Mr. Bononi

> shall be substituted for and displace the Executive Committee of Unique and shall have full authority to exercise all powers and authority given to the Executive Committee by the Amended Operating Agreement of Unique Ventures Group, LLC dated July 31, 2015. . . the Executive Committee and its members and former members (namely, Michael I. Frangoulis, Jr., Jack R. Kuhn, Michael Rusnock and J. Michael Sabatini) shall be enjoined from exercising any governing authority over Unique as given to them by the Amended Operating Agreement or otherwise. Neither the Executive Committee nor its members or former members, acting individually or collectively, nor any other person apart from the Temporary Receiver and his designees, shall act or attempt to act for or on behalf of Unique, nor shall any such person or persons apart from the Temporary Receiver and his designees have any authority to act for or on behalf of Unique.

*See* Exhibit B.

13. By virtue of the Receivership Order, Eric E. Bononi is the sole corporate manager of Unique and therefore exercises complete and exclusive authority over the business affairs of Unique, in place of the Executive Committee, its members or any other former management. In this capacity, Mr. Bononi became solely responsible for the operation, management, maintenance and preservation of Unique and its property under the terms of the Receivership Order, including taking such steps as he believes are necessary to manage, operate, protect, and preserve the property.

14. Since his appointment, the Receiver has begun to investigate various allegations made by the rival factions of insiders and to perform a forensic accounting of the business.

15. The Receiver has determined that "Elite Restaurant Group, LP", does not conduct any business operations and has no revenue of its own. Instead, funds flowing through Elite were the revenue, assets and property of Unique.

16. Elite was not authorized to open banking accounts or to receive and administer the revenue of Unique. Nonetheless, the Receiver has determined that commencing in April 2015, and continuing until his appointment, Unique's revenue funds had been diverted to various Elite bank accounts for subsequent disbursement.

17. The reason for the diversion of Unique's revenues has not been fully explained to the Receiver, nor have the reasons for the subsequent disbursement of those funds. What has been determined, however, is that since the involvement of Elite in the Unique flow of funds, Unique revenues have been disbursed through Elite bank accounts *while Unique has accumulated delinquent Pennsylvania Sales Tax, Ohio Sales Tax, and Federal Employee Withholding Taxes in the collective amount of $1,824,293.*

18. Since the appointment of the Receiver, Unique's flow of funds have been streamlined to provide accountability and now deposit only into Unique's accounts. Further, the capacity of insiders to conduct wire transfers of funds has been eliminated, as this is allegedly how revenues of Unique were diverted or misappropriated.

**RELIEF REQUESTED**

19. By this Motion, the Debtor seeks entry of an Order, pursuant to 11 U.S.C §§105(a) and 543(d) (i) authorizing the Receiver to remain in possession, custody, and Control of the Debtor's properties under 11 U.S.C. §543(d); (ii) excusing the Receiver from complying with any

turnover or other requirements under 11 U.S.C. §§543(a) and (b), to the extent applicable; and (iii) authorizing the Receiver to maintain and operate estate property in the ordinary course of business pursuant to the Receivership Order and 11 U.S.C. §§1107 and 1108.

## BASIS FOR RELIEF

20. A state court-appointed receiver of property of the debtor is a "custodian" subject to 11 U.S.C. §543(b). *See* 11 U.S.C. §101(11). Section 543(b) ordinarily requires a custodian turn over property of the estate to the debtor in possession. But the Receiver here is not merely a receiver of the Debtor's property—he is the sole manager of the Debtor in place of all prior management authority. As such, any obligation to turn over the Debtor's property to the debtor in possession would be a tautology—he would be required to turn it over to himself.

21. While the turnover requirement of section 543(b) arguably does not apply (or would have no effect) to this Receiver under these circumstances, section 11 U.S.C. §543(d)(1) provides a mechanism to remove all doubt. Under that section, after notice and hearing, the Court may excuse the Receiver from turnover "if the interests of creditors and, if the debtor is not insolvent, of equity security holders would be better served by permitting a custodian to continue in possession custody, or control of such property…" 11 U.S.C. §543(d)(1).

22. When considering whether to exercise its discretion under 11 U.S.C. §543(d), a court typically considers several factors indicative of whether the interests of creditors best will be served. These factors include: (1) whether there will be sufficient income to fund a successful reorganization; (2) whether the debtor will use its property for the benefit of the creditors; and (3) whether there has been mismanagement by the debtor. Even if these factors are resolved in favor of the debtor, the court may still excuse compliance if turnover would be injurious to creditors. *In re Poplar Springs Apartments of Atlanta, Ltd.*, 103 B.R. 146, 150 (Bankr. S.D. Ohio 1989)(prepetition state-court appointed receiver relieved from turning over property to the debtor because the creditor's interest was better served by allowing the receiver to retain possession).

23. Courts have frequently excused turnover under 11 U.S.C. §543(d) where a receiver has been appointed by a state court and where the receiver will better serve the interests of creditors. *See Vanderveer Estates Holding, LLC*, 293 B.R. 560, 561 (Bankr. E.D.N.Y. 2003); *In re Olympia & York Maiden Lance Co.*, LLC, 233 B.R. 662, 666-67 (Bankr. S.D.N.Y. 1999); *In re Ofty Corp.*, 44 B.R. 479, 481 (Bankr. D. Del. 1984).

24. "Regardless of what factors are used to aid the court in its decision, the paramount and sole concern is the interests of *all* creditors." *In re Falconridge, LLC*, 2007 Bankr. LEXIS 3755, 2007 WL 3332769 (Bankr. N.D. Ill. 2007), *citing In re KCC-Fund V, Ltd.*, 96 B.R. 237, 239 (Bankr. W.D. Mo. 1989) (emphasis in original). Accordingly, even if certain equities may otherwise favor giving a debtor in possession access to all its assets while attempting to reorganize, evidence of mismanagement or questionable business practices by the Debtor may negate the statutory obligation of a custodian to turnover assets to a debtor in bankruptcy.[1]

## MAINTAINING THE RECEIVER BEST PROTECTS THE INTERESTS OF THE CREDITORS OF UNIQUE

25. The history of Unique while under the control of its insiders is replete with evidence of mismanagement and questionable business practices. If the turnover requirement under § 543(b) were determined to apply and to require the surrender of control to the Debtor's former management, there would be no benefit to the creditors and, in fact, such turnover would likely be detrimental to the creditors' interests.

26. By way of example, certain former members of the Executive Committee suffer from disqualifying conflicts of interest. For example, Unique sued former Executive Committee members J. Michael Sabatini and Joseph E. Rusnock, among others, at Case No. GD-16-002322 to recover assets diverted by or for the benefit of these former Executive Committee members. Similarly, the Sabatini Family Limited Partnership, which is controlled by J. Michael Sabatini, filed a lawsuit for damages against Unique at Case No. GD-16-01356. Allowing these former managers to resume control of Unique would risk enabling them to engage in further self-dealing, including causing the company to abandon the claims against them.

27. Further, the Receiver has been advised by Spirit Funding, the Debtor's primary secured lender, that it would oppose the turnover of the Debtor's assets to prior management.

WHEREFORE, the Debtor and Debtor in Possession prays that this Court enter an Order in the form attached hereto pursuant to 11 U.S.C §§105(a) and 543(d) granting the following relief:

---

[1] Just as significantly, continuing the status of Eric Bononi as the court-appointed Receiver over Unique does not deprive the Debtor and Debtor in Possession of its property in the fashion contemplated by section 543. Rather, because the Receivership Order appoints Mr. Bononi as the exclusive corporate manager in place of all prior management (namely, the Executive Committee), his continued possession of such property *constitutes* the possession by Debtor of its property.

(i) authorizing the Receiver to remain in possession, custody, and Control of the Debtor's properties under 11 U.S.C. §543(d); (ii) excusing the Receiver from complying with any turnover or other requirements under 11 U.S.C. §§543(a) and (b), to the extent applicable; and (iii) authorizing the Receiver to maintain and operate estate property in the ordinary course of business pursuant to the Receivership Order and 11 U.S.C. §§1107 and 1108.

> Respectfully submitted,
> RudovLaw
> ***/s/ David K. Rudov, Esq.***
> David K. Rudov, Esq.
> Pa. I.D. #35579
>
> The Frick Building
> 437 Grant Street, Suite 1806
> Pittsburgh, PA 15219
> (Tel) 412-223-5030
> (Fax) 412-281-1121
> david@rudovlaw.com
>
> and
>
> ***/s/ Scott M. Hare, Esq.***
> Scott M. Hare, Esq.
> Pa I.D. No. 63818
>
> The Frick Building – Suite 1806
> 437 Grant Street
> Pittsburgh, PA 15219
> (Tel) 412-338-8632
> scott@scottlawpgh.com
>
> Proposed Counsel to the Debtor

Date: February 15, 2017